IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Atlantic Pacific Equipment, LLC and AT-PAC Scaffold Services, Inc., <br><br> Plaintiffs <br><br> v. <br><br> MPC Solutions, LLC, Troy Kowalski, Troy Lumsden, Byron Sedgwick, The Cert Locker, Inc. d/b/a Formidable Designs, Matthew Bellon, DH Jaxon Construction LLC f/k/a Bell-Scaff Solutions, LLC and LegacyX Software, Inc., <br><br> Defendants. | C/A No.  0:21-cv-03924-CMC <br><br><br><br><br> **ORDER** |

### I. Introduction.

Two related companies that specialize in designing custom scaffolding solutions for large-scale industrial projects brought this civil action against eight defendants, including two former employees, alleging various state and federal causes of action arising from allegations of, *inter alia*, copyright infringement of a software program and theft of trade secrets and confidential information.   In this order, the court addresses (1) motions to dismiss for lack of personal jurisdiction by one of the two former employees and an individual and his company with whom they do business; and (2) a motion to transfer venue to the Western District of Wisconsin by both former employees and a limited liability company formed in Wisconsin.  ECF Nos. 20; 45.  For reasons that follow, the court (1) holds it does not have personal jurisdiction over Defendants Troy Kowalski ("Kowalski"), Byron Sedgwick ("Sedgwick"), or The Cert Locker, Inc. d/b/a Formidable Designs ("Cert Locker"), (2) grants the motions to dismiss for lack of personal

jurisdiction by Sedgwick and Cert Locker, ECF No. 45; (3) grants the motion to transfer venue to the Western District of Wisconsin, ECF No. 20, and (4) denies as moot Kowalski's motion to dismiss for lack of personal jurisdiction, ECF No. 20.

## II. Relevant Procedural History.

On December 3, 2021, Plaintiffs Atlantic Pacific Equipment, LLC ("AT-PAC") and AT-PAC Scaffold Services, Inc. ("AT-PAC Scaffold") (collectively "Plaintiffs") initiated this action by filing a complaint ("the Complaint") alleging thirteen causes of action. ECF No. 1. AT-PAC is a Delaware limited liability company with its principal place of business in Roswell, Georgia.[1] *Id.* at 3. AT-PAC Scaffold is a Canadian corporation with its principal place of business in Edmonton, Alberta, Canada. *Id.* While there are two plaintiffs, in some instances, only a single plaintiff is alleging a particular cause of action.

While there are a total of eight named defendants in the Complaint, no single defendant is named in all thirteen causes of action. The eight defendants are MPC Solutions, LLC ("MPC"), Kowalski, Troy Lumsden ("Lumsden"), Sedgwick, Cert Locker, Matthew Bellon ("Bellon"), DH Jaxon Construction LLC f/k/a Bell-Scaff Solutions, LLC ("DH Jaxon"), and LegacyX Software, Inc. ("LegacyX") (collectively "Defendants" or "all eight Defendants"). The second paragraph in the Complaint sets forth the crux of Plaintiffs' allegations:

---

[1]   Prior to October 2020, AT-PAC was organized as "Atlantic Pacific Equipment, Inc.," a Georgia corporation with its principal place of business in Georgia. ECF No. 1 at 3 (Complaint). In October 2020, Atlantic Pacific Equipment, Inc. was converted to "Atlantic Pacific Equipment, LLC," a Delaware corporation, which assumed all corporate assets and obligations of Atlantic Pacific Equipment, Inc. *Id.*; 38-1 at 2.

2

2.     MPC, a company founded and now operated by several former AT-PAC employees, including Lumsden and Kowalski, is, upon information and belief, currently utilizing AT-PAC's confidential information, trade secrets, and copyrighted materials to operate its business and compete unlawfully with AT-PAC.  In so doing, Lumsden and Kowalski are directly violating the restrictive covenants contained in their respective employment agreements with AT-PAC. LegacyX, through the actions of its now former employee, Sedgwick, propagated and assisted the actions of MPC, Lumsden, and Kowalski, and has violated its consultancy contract with AT-PAC by failing to protect AT-PAC's confidential information and trade secrets.  Sedgwick, individually and through his company [Cert Locker] is actively assisting Lumsden, Kowalski, and MPC in their wrongful conduct.  Further, Bellon, a former contractor of AT-PAC, and his company Bell-Scaff, are assisting MPC, Lumsden, and Kowalski in misappropriating AT-PAC's proprietary information.  All Defendants are violating South Carolina and federal law, as fully set forth herein.

*Id.* at 2.  Paragraph 3 of the Complaint sets forth the laws under which Plaintiffs seek relief and

the type of relief sought:

3.     Through this action, Plaintiffs seek damages for and permanent injunctive relief against, the actions of Defendants pursuant to the Defend Trade Secrets Act . . ., 18 U.S.C. § 1836; the South Carolina Uniform Trade Secrets Act . . ., S.C. Code § 39-8-10, *et seq.*; the copyright laws of the United States; various contractual obligations between [AT-PAC] and several of the Defendants; and the statutory and common law of the State of South Carolina.  Plaintiffs also seek preliminary injunctive relief against MPC, Lumsden, Kowalski, Bellon, and Bell-Scaff.

*Id.*

The Complaint alleges venue is proper in the District of South Carolina "pursuant to 28

U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim

occurred in this District."  ECF No. 1 at 4 (Complaint).  Notably, under the heading "PARTIES,

JURISDICTION, AND VENUE," the Complaint alleges "[u]pon information and belief, MPC is

organized under the laws of the state of South Carolina and under the laws of the state of

Wisconsin, with headquarters located in Rock Hill, South Carolina."  *Id.* at 3.  As will be explained

3

more thoroughly later, MPC is not organized under the laws of South Carolina; rather it is a limited liability company organized under the laws of Wisconsin.

In the first cause of action, AT-PAC alleges theft of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839, against all eight Defendants.  ECF No. 1 at 24–25.

In the second cause of action, AT-PAC alleges theft of trade secrets in violation of the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 to 39-8-130, against all eight Defendants.  ECF No. 1 at 25–26.

In the third cause of action, AT-PAC alleges direct copyright infringement against MPC, Lumsden, Kowalski, and DH Jaxson under the Copyright Act, 17 U.S.C. §§ 106, 501.  ECF No. 1 at 26–27.

In the fourth cause of action, AT-PAC alleges contributory copyright infringement against all eight Defendants, presumably under the Copyright Act and general principles of law applied thereto, *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3 544, 550 (4th Cir. 2004) (observing Copyright Act does not specifically provide for liability for contributory copyright infringement, yet under general principles of law contributory liability under the Copyright Act may be imposed). ECF No. 1 at 28–29.

In the fifth cause of action, AT-PAC alleges breach of contract solely against Lumsden with respect to contractual obligations he owed AT-PAC under an employment agreement he and AT-PAC executed on January 25, 2016.  ECF Nos. 1 at 29–30; 1-4.  AT-PAC does not specify the substantive law governing this cause of action, but the agreement itself expressly provides it "shall be governed by the laws of the United States of America."  ECF No. 1-4 at 7.

4

In the sixth cause of action, Plaintiffs allege breach of contract solely against Kowalski with respect to contractual obligations he owed AT-PAC Scaffold under an employment agreement he and AT-PAC Scaffold executed on January 23, 2013.  ECF Nos. 1 at 30; 1-7. Plaintiffs allege AT-PAC is a third-party beneficiary of this agreement "as [AT-PAC's] confidential information and trade secrets were expressly protected by the agreement."  ECF No. 1 at 30.  Plaintiffs do not specify the substantive law governing this cause of action, but the agreement expressly provides it "shall be governed by the laws of the Province of Alberta and the parties irrevocably attorn to the jurisdiction of the Courts of the Province of Alberta in respect of any matter or thing arising out of this agreement."  ECF No. 1-7 at 8.

In the seventh cause of action, AT-PAC alleges breach of contract solely against LegacyX pertaining to a consulting and service agreement AT-PAC and LegacyX executed on December 1, 2017.  ECF Nos. 1 at 31; 1-10.  Although AT-PAC does not specify the substantive law governing this cause of action, the agreement itself provides "[t]he laws of the Province of Alberta shall apply to this Agreement."  ECF No. 1-10 at 5.

In the eighth cause of action, AT-PAC alleges breach of contract solely against LegacyX pertaining to a software maintenance agreement AT-PAC and LegacyX executed in April 2019, ECF Nos. 1 at 31–32; 1-11 at 11, but specifying it was "made this 1st day of February, 2019," ECF No. 1-11 at 2.  Although AT-PAC does not specify the substantive law it asserts governs this cause of action, the court notes the agreement provides "[t]he laws of the Province of Alberta shall apply to this Agreement."  ECF No. 1-11 at 10.  The court also notes the agreement contains the following arbitration clause:

5

> In the event of a dispute between the parties with respect to any of the provisions hereof, the parties agree to submit such dispute to a single arbitrator to be chosen by the parties.  Should the parties be unable to agree on the choice of a single arbitrator, such arbitrator shall be chosen by a Justice of the Court of Queens's Bench in Alberta.  The arbitration shall be held pursuant to the provisions of the Arbitration Act of Alberta as then in force.

*Id.* at 10.

On January 5, 2022, (1) Kowalski filed a Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and (2) Kowalski, Lumsden, and MPC (collectively "the MPC Defendants") jointly filed a Motion to Transfer Venue to the Western District of Wisconsin, pursuant to 28 U.S.C. § 1406.  ECF No. 20.  As part of that motion, the MPC Defendants submitted unrefuted evidence MPC is organized under the laws of Wisconsin only—not South Carolina.  ECF Nos. 20 at 2–3; 22-2; 22-3; 22-49; 22-50.  Clearly, Plaintiffs mistakenly believed a South Carolina limited liability company named "MPC Solutions LLC" with a principal office located at 970 9th Avenue, Galivants Ferry, South Carolina, 29544, and no affiliation with MPC, was the "the same company" as MPC.  ECF No. 1 at 3.  Once confronted with such evidence, Plaintiffs did not further press the point MPC, organized under the laws of Wisconsin, is the same company as MPC Solutions LLC, organized under the laws of South Carolina.

Although Kowalski contends the District Court in South Carolina lacks personal jurisdiction over him, he consents to personal jurisdiction in the Western District of Wisconsin because, according to Kowalski, he provides consulting services to MPC, which is based in Wisconsin.  ECF Nos. 20 at 8 n.3, 9 n.4, 15; 22-1 at 17; 48-2 at 16.  Both motions were filed in a

6

joint document with numerous exhibits as attachments.  ECF Nos. 20; 22.  Plaintiffs filed their Response to both motions on January 21, 2022, with numerous exhibits as attachments.  ECF No. 38.  Although Plaintiffs oppose both motions, they agree the court may transfer venue to the Western District of Wisconsin in the event the court first determines venue in the District of South Carolina is improper.  ECF No. 38 at 12 n.3.  On January 31, 2022, the MPC Defendants filed their Reply to Plaintiffs' Response along with revised Declarations by Sedgwick and Kowalski.  ECF Nos. 46; 48.

On January 31, 2022, Sedgwick and Cert Locker filed a joint Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), with one exhibit as an attachment.  ECF No. 45.  On February 14, 2022, Plaintiffs filed their Response to this motion with numerous exhibits as attachments.  ECF No. 57.  On February 22, 2022, Sedgwick and Cert Locker filed their Reply with numerous exhibits as attachments.  ECF No. 62.

On February 8, 2022, the court set a hearing for March 10, 2022, on both Motions to Dismiss for Lack of Personal Jurisdiction and the MPC Defendants' Motion to Transfer Venue. ECF No. 52.  Although Plaintiffs acknowledged in their Response that, "[w]ithout the benefit of discovery, [Plaintiffs] do[] not know the full extent of Kowalski's interactions with this forum," they filed no motion for jurisdictional discovery pursuant to Federal Rule of Civil Procedure 7(b)(1).  ECF No. 38 at 9.  Rather, Plaintiffs assert in a footnote their "belie[f] the record is sufficient to deny" Kowalski's Motion to Dismiss for Lack of Personal Jurisdiction but the court "should order jurisdictional discovery prior to ruling" in the event it "has any doubt about the extent of the record . . . ."  ECF No. 38 at 9 n.2.  Plaintiffs followed the identical course as to

7

Sedgwick and Cert Locker in their Response, acknowledging that "[w]ithout the benefit of discovery, [they] do[] not know the full extent of [Sedgwick and Cert Locker's] interactions with this forum," ECF No. 57 at 10–11, filing no motion for jurisdictional discovery pursuant to Federal Rule of Civil Procedure 7(b)(1), and asserting in a footnote their "belie[f] that the record is sufficient to deny" Sedgwick and Cert Locker's Motion to Dismiss but the court "should order jurisdictional discovery prior to ruling" in the event it "has any doubt about the extent of the record . . . ." ECF No. 57 at 11 n.5.

On March 10, 2022, the court conducted an in-person hearing in open court, affording the parties a fair opportunity to present both the relevant jurisdictional and venue evidence and their legal arguments on both motions. *Sneha Media & Ent., LLC v. Associated Broad. Co. P LTD.*, 911 F.3d 192, 197 (4th Cir. 2018). The motions are now ripe for disposition. The court takes up the motions to dismiss for lack of personal jurisdiction first.

## III.  Motions to Dismiss for Lack of Personal Jurisdiction.

### A. The Applicable Law and the Burden of Proof.

In 1945, in *International Shoe Co. v. Washington*, the Supreme Court famously held a state court may exercise personal jurisdiction over a non-resident defendant if the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In the nearly eight decades since, "the jurisprudence of minimum contacts has developed as a surrogate for presence in the [forum] state because [a] state's sovereignty remains territorial, and its judicial power extends over only those persons,

8

property, and activities within its borders." *ESAB Grp., Inc.* v. *Centricut, Inc.*, 126 F.3d 617, 622–23 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original).  Relevant to the instant case, a federal court has power to exercise personal jurisdiction over a non-resident defendant if authorized by the long-arm statute of the state in which the court sits and the statute's application is consistent with the Due Process Clause of the Fourteenth Amendment.  Fed. R. Civ. P. 4(k)(1)(A); *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *ESAB Grp., Inc.*, 126 F.3d at 622–23.  Subsection (A) of South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A).  Subsection (B) of the same statute provides "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."  *Id.*  § 36-2-803(B).  The Supreme Court of South Carolina has interpreted this statute to extend to the outermost limits permitted by the Due Process Clause of the Fourteenth Amendment.  *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491

9

(S.C. 2005).  Thus, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ESAB Grp., Inc.*, 126 F.3d at 623.

There are two types of personal jurisdiction a court may constitutionally exercise over a defendant—general and specific.  "General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The sweeping breadth of the class of claims a defendant must defend under general jurisdiction is constitutionally justified by the fact "a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919).  Plaintiffs, who bear the burden of establishing personal jurisdiction, contend the court has specific but not general jurisdiction over Kowalski, Sedgwick, and Cert Locker.  The court will thus limit its personal jurisdictional analysis to specific jurisdiction only.

As the Supreme Court explained in *Walden v. Fiore*, the specific-jurisdiction inquiry under the Due Process Clause "'focuses on the relationship among the defendant, the forum, and the litigation.'" 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  The case-related focus of specific jurisdiction "seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).  The law is well-settled the court must employ a three-part test to determine whether it may constitutionally exercise specific jurisdiction over a nonresident defendant. *See*, *e.g.*, *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th

10

Cir. 2014) ("[W]e employ a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process."). A "yes" to each question is required to satisfy the Due Process Clause.

The first part of the test asks whether moving defendants themselves took one or more actions by which they created a "'substantial connection'" with South Carolina, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)), such that they "purposefully avail[ed] [themselves] of the privilege of conducting activities within" South Carolina, "thus invoking the benefits and protections of its laws," *Hansen v. Denckla*, 357 U.S. 235, 253 (1958). Notably, "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton*, 465 U.S. at 774). Moreover, "[t]hey must show that the defendant deliberately 'reached out beyond' [his] home—by, for example, 'exploit[ing] a market' in [South Carolina] or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden*, 571 U.S. at 285) (second alteration in original). The second part of the test asks whether the lawsuit "'arise[s] out of or *relate*[s] *to*'" the defendant's contacts with South Carolina. *Id.* at 1026 (quoting *Bristol-Myers*, 137 S. Ct. at 1780). Recently, in *Ford Motor Co.*, the Supreme Court made clear the "arises out of" portion of this standard asks about causation, while the "relates to" portion "contemplates that some relationships will support jurisdiction without a causal showing." 141 S. Ct. at 1026. The third and final part of the test asks whether the exercise of personal jurisdiction over a defendant is constitutionally reasonable. *Universal Leather, LLC*, 773 F.3d at 559.

11

Plaintiffs bear the burden of establishing the court's personal jurisdiction. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Whether Plaintiffs bear the burden under the *prima facie* standard or the more strenuous preponderance of the evidence standard depends upon whether the parties have had a fair opportunity to develop the record and to present relevant jurisdictional evidence and legal arguments at a hearing "— *i.e.*, an 'evidentiary hearing . . . .'" *Sneha Media & Ent., LLC*, 911 F.3d at 197 (quoting *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)). If they have, in order to survive a motion to dismiss under Rule 12(b)(2), "the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence[.]" *Id.* at 197. If they have not, under the *prima facie* standard, even when the motion is accompanied by affidavits, the court gives the plaintiff's allegations in the complaint "a favorable presumption, taking the allegations in the light most favorable to the plaintiff." *Id.* at 196. Nonetheless, the court should consider undisputed facts proffered by the defendant in support of a motion to dismiss for lack of personal jurisdiction, for example, in an Affidavit or sworn Declaration. *Baskin–Robbins Franchising, LLC v. Alpenrose Dairy, Inc*., 825 F.3d 28, 34 (1st Cir. 2016). Here, for reasons to follow, Plaintiffs have failed under either standard with respect to Kowalski, Sedgwick, and Cert Locker.[2]

---

[2] The court notes the more strenuous preponderance of the evidence standard is likely the applicable standard. The parties have had a fair opportunity to develop the record and present relevant jurisdictional evidence and legal arguments at the March 10, 2022, hearing. *Sneha Media & Ent.*, 911 F.3d at 197 ("In circumstances when, as here, the court does not preclude the parties from pursuing jurisdictional discovery, . . . and holds a hearing at which the parties may present relevant evidence and legal arguments based on a developed record, plaintiffs will be held to the Footnote Continued . . .

**B. The Relevant Facts.**

Despite Plaintiffs' failure to move for jurisdictional discovery, the parties developed the record beyond the initial motions.

### 1. Kowalski.

Kowalski is a Canadian citizen and resident of the Province of Alberta, Canada. ECF Nos. 1 at 3 (Complaint); 22-1 at 10 (Kowalski Original Declaration); 48-2 at 9 (Kowalski Revised Declaration). In 1991, he received a Bachelor of Interior Design from the Faculty of Architecture of the University of Manitoba in Western Canada. ECF Nos. 22-1 at 3 (Kowalski Original Declaration); 48-2 at 2 (Kowalski Revised Declaration). Kowalski is not educated in writing software code and has no experience in writing software code. *Id.*

Kowalski does not currently own nor has he ever owned property in South Carolina. ECF Nos. 22-1 at 16 (Kowalski Original Declaration); 48-2 at 15 (Kowalski Revised Declaration). He does not currently maintain nor has he ever maintained an office in South Carolina. He has only visited South Carolina once in his life in early 2007 for a meeting lasting a few days while

---

burden of establishing personal jurisdiction by a preponderance of the evidence."). Despite Plaintiffs acknowledging they do not know the full extent of Kowalski, Sedgwick, and Cert Locker's interactions with South Carolina, Plaintiffs filed no motion for jurisdictional discovery. Even treating Plaintiffs' passing references to jurisdictional discovery in their Responses, *see* ECF Nos. 38 at 9 n.2, 12; 57 at 11 n.5, 13, as motions is of no help to Plaintiffs who offered only speculation and conclusory assertions about Kowalski, Sedgwick, and Cert Locker's contacts with South Carolina. "[W]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md., Inc.,* 334 F.3d at 402 (citing *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983)).

13

employed by Ameco from November 2006 through February 2008 as Ameco's Canadian Country Manager. *Id.* At the time, Ameco had its headquarters in Greenville, South Carolina and was in the business of equipment sales and rentals such as forklifts, backhoes, small tools, and consumables. *Id.* Ameco did not provide scaffolding and services. *Id.*

As previously set forth, AT-PAC Scaffold is a Canadian corporation with its principal place of business in Edmonton, Alberta, Canada. ECF No. 1 at 3 (Complaint). AT-PAC Scaffold employed Kowalski in various positions between February 2010 and October 27, 2017. ECF Nos. 22-1 at 2, 6 (Kowalski Original Declaration); 48-2 at 2, 5 (Kowalski Revised Declaration). At all times of Kowalski's employment tenure with AT-PAC Scaffold, he resided in Canada. ECF Nos. 22-1 at 10 (Kowalski Original Declaration); 48-2 at 9 (Kowalski Revised Declaration). AT-PAC, with its principal place of business in Roswell, Georgia, never employed Kowalski. From 2013 to 2017, AT-PAC Scaffold "assigned [Kowalski] to assemble and manage a team to develop the software ultimately known as Hi-Vis, that would better allow AT-PAC Scaffold to compete in the scaffold construction management services business with other companies operating in the same business vertical that were offering scaffold management services." ECF Nos. 22-1 at 3 (Kowalski Original Declaration); 48-2 at 2 (Kowalski Revised Declaration). *See also* ECF No. 1 at 14 (Complaint). In carrying out these duties for AT-PAC Scaffold, Kowalski did not write software code. ECF Nos. 22-1 at 3 (Kowalski Original Declaration); 48-2 at 2 (Kowalski Revised Declaration). The Hi-Vis software program provides Plaintiffs' "customers with access to real-time electronic scaffold requests and scaffold management processes to track scaffolding resources, labor, and material deployed on a particular project." ECF No. 1 at 5 (Complaint).

14

Kowalski entered into an employment agreement with AT-PAC Scaffold on January 23, 2013, which expressly provides it "shall be governed by the laws of the Province of Alberta and the parties irrevocably attorn to the jurisdiction of the Courts of the Province of Alberta in respect of any matter or thing arising out of this agreement." ECF No. 1-7 at 8 (Copy of the Agreement; Exhibit E to the Complaint).  Plaintiffs allege AT-PAC is a third-party beneficiary of this agreement "as [AT-PAC's] confidential information and trade secrets were expressly protected by the agreement." ECF No. 1 at 30 (Complaint).  This agreement is the subject of Plaintiffs' sixth cause of action, alleging breach of contract. *Id.*

Kowalski holds a 26.5325% membership interest in MPC.  ECF No. 38-6 at 8 (Exhibit F to Plaintiffs' Response).  BellScaff MPC Solutions, LTD. is an Alberta, Canada corporation, formed on February 8, 2019.  ECF No. 38-5 at 2 (Exhibit E to Plaintiffs' Response).  As of September 20, 2021, Kowalski is listed as its sole director and voting shareholder. *Id.*  In Kowalski's capacity as Senior Construction Management Consultant of BellScaff MPC Solutions, LTD., he serves as one of three managers of MPC.  ECF No. 48-2 at 1 (Kowalski Revised Declaration).

Pursuant to an employment agreement executed on January 25, 2016, AT-PAC employed Lumsden for fourteen months until March 22, 2017.  ECF Nos. 1 at 10 (Complaint); 1-4 (Copy of Agreement; Exhibit B to the Complaint); 22-2 at 3 (Lumsden Declaration).  Lumsden initially served as AT-PAC's Managing Director for North America.  ECF No. 1 at 8 (Complaint).  He was later promoted to Chief Operating Officer, worked with Kowalski in that capacity, and "was responsible for the development of Hi-Vis from a business management perspective." *Id.* at 10.

15

Lumsden is a resident of Rock Hill, South Carolina, lived in Rock Hill during the time he worked for AT-PAC, *id.* at 3, and still does, ECF No. 22-2 at 11 (Lumsden Declaration).   Lumsden holds a 26.5325% membership interest in MPC and was involved in MPC's formation.  ECF Nos. 22-2 at 6 (Lumsden Declaration); 22-5 (Exhibit 1 to Osswald Declaration); 38-6 at 7–8 (Exhibit F to Plaintiffs' Response).   Since MPC's formation, Lumsden has had a consulting contract with MPC and serves as one of its managers.  ECF No. 22-2 at 6 (Lumsden Declaration).

MPC is a Wisconsin limited liability company formed on June 18, 2018.[3]  ECF Nos. 22 at 2 (Osswald Declaration); 22-5 at 2 (Exhibit 1 to Osswald Declaration).  According to the website for Wisconsin's Department of Financial Institutions, which maintains Wisconsin's business and organization filings, Chris Osswald ("Osswald") of 8404 Venture Cir., Weston, Wisconsin, 54476-4535, is registered as MPC's corporate agent, and this same address is listed as MPC's principal office.[4]  ECF Nos. 22 at 2–3 (Osswald Declaration); 22-5 at 2 (Exhibit 1 to Osswald Declaration). Osswald has submitted a Declaration to this effect in which he also avers MPC's corporate records are maintained at this same Wisconsin address.  ECF No. 22 at 2–3.  For assistance with financial matters, Osswald avers MPC uses a Wisconsin-based accounting firm.  ECF No. 22 at 5.  The contact page for MPC's website, mpcsolutionsllc.com lists only one contact address as follows:

---

[3]   MPC was originally formed in Wisconsin under the name BellScaff MPC Solutions, LLC.  On November 1, 2019, the name changed from BellScaff MPC Solutions, LLC to MPC Solutions, LLC, which name the court earlier defined as "MPC" for ease of reference throughout this Order. ECF Nos. 1 at 19 (Complaint); 22 at 4 (Osswald Declaration); 22-5 at 3 (official document of Wisconsin Department of Financial Institutions evidencing name change).
[4]   This is also the address for Applied Laser Technologies, a business in which Osswald is owner and managing partner.  ECF No. 38-4 (screen shot of website for Applied Laser Technologies).

16

"Find us in Rock Hill! #220 1236 Ebenezer Rd, Rock Hill, SC 29732."  ECF No. 38-2 at 2 (screen shot of webpage).  To the left of this message is the image of a map of Rock Hill, South Carolina with a pin dropped at the location of this address.  *Id.*  MPC's page on the business networking website LinkedIn lists "Rock Hill, SC" as its headquarters and the Ebenezer Road address as its "Primary" location.  ECF No. 38-3 at 2.  No additional locations are listed.  *Id.*

"MPC provides a wide range of design and engineering services, construction planning and project management services and risk management services."  ECF No. 22 at 3 (Osswald Declaration).  On August 27, 2018, MPC licensed the Swift Plant software program from its creator DPS Solutions, Inc. ("DPS"), an Alberta, Canada corporation.  *Id.*; 22-6.  The agreement effectuating this licensing arrangement ("the Swift Plant Licensing Agreement") provided it

> shall be governed exclusively by the laws of the State of Wisconsin, without regard to its conflict of laws rules.  The state and federal courts located in Marathon County, Wisconsin shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this Agreement.  Each Party consents to the exclusive jurisdiction of such courts.

ECF No. 22-6 at 16.

Subsequently, on September 9, 2019, MPC Innovations, LLC ("MPC Innovations"), a Wisconsin limited liability company with its principal office in Rothschild, Wisconsin, purchased ownership of the Swift Plant software program and the related intellectual property rights from DPS, two other Alberta, Canada corporations (Christopher Aguirre, Inc. and David Lawrence, Inc.) and two individual Canadian residents (Christopher Aguirre and David Lawrence). ECF Nos. 22 at 3–4 (Osswald Declaration); 22-7 at 3 (Software Transfer Agreement defining "Sellers" as "DPS, Aguirre, Inc., Lawrence, Inc., Aguirre, and Lawrence collectively").  The purchase was

17

executed via a "Software Transfer Agreement," which notably provided:  (1) it shall be governed in all respects by the laws of the United States of America and Wisconsin; and (2) any judicial action or proceeding arising under or relating to the agreement "shall be brought in, and the Parties hereby consent to the exclusive, personal jurisdiction of, the Circuit Court of the State [of] Wisconsin, County of Marathon, or in the United States District Court for the Western District of Wisconsin."  ECF No. 22-7 at 14 (Software Transfer Agreement).

MPC and MPC Innovations merged on July 15, 2020, with MPC as the surviving company. ECF Nos. 22 at 4 (Osswald Declaration); 22-8 (State of Wisconsin Articles of Merger); 38-6 (same).  Pursuant to the merger, MPC owns the Swift Plant software program.  ECF Nos. 22 at 4 (Osswald Declaration); 22-2 at 7 (Lumsden Declaration).

According to Plaintiffs, "the essential basis of the lawsuit and claims is the allegation that MPC Defendants, including Kowalski, have infringed and misappropriated AT-PAC's protected copyright and proprietary and confidential information, primarily in relation to the Hi-Vis software." ECF No. 38 at 9.  In this regard, Plaintiffs allege Defendants committed copyright infringement and theft of trade secrets based on MPC's use of the Swift Plant software system to unfairly compete against Plaintiffs for customers by benefitting from the financial amounts Plaintiffs have invested in creating its Hi-Vis platform and processes.  ECF No. 1 at 20.

Currently, MPC only uses Swift Plant to support the services it provides Zachry Industrial Inc. ("Zachry") on two large-scale industrial construction projects in Texas.  ECF No. 22-2 at 8 (Lumsden Declaration).  MPC has never had a customer in South Carolina.  ECF No. 22 at 5 (Osswald Declaration).  Kowalski avers he speaks with Lumsden from time to time but denies

18

having solicited any business from potential customers in South Carolina.  ECF Nos. 22-1 at 17 (Kowalski Original Declaration); 48-2 at 16 (Kowalski Revised Declaration).

### 2. Sedgwick and Cert Locker.

Sedgwick is a Canadian citizen and resides in the Province of Alberta, Canada.  ECF Nos. 1 at 3 (Complaint); 22-4 at 2 (Sedgwick First Declaration); 45-1 at 1 (Sedgwick Second Declaration).  He has never physically been in South Carolina, maintained an office in South Carolina, nor owned property in South Carolina.  ECF No. 45-1 at 2.

Cert Locker is a Canadian Corporation with its principal place of business in the Province of Alberta, Canada.  ECF Nos. 1 at 3 (Complaint); 22-4 at 2 (Sedgwick First Declaration); 45-1 at 1 (Sedgwick Second Declaration).  Cert Locker is in the business of computer software development and maintenance.  ECF No. 22-4 at 4 (Sedgwick First Declaration).  Cert Locker has never maintained an office or owned property in South Carolina.  ECF No. 45-1 at 3 (Sedgwick Second Declaration).  Makzo Corp., an entity with the same Rock Hill, South Carolina address MPC uses on its website and LinkedIn page, holds 16.67 percent of Cert Locker's voting shares.  ECF No. 57-2 at 4 (Alberta Canada Corporate Record for Cert Locker).

LegacyX, a software developer and maintenance company, is also a Canadian Corporation with its principal place of business in the Province of Alberta, Canada.  ECF Nos. 1 at 4 (Complaint); 22-4 (Sedgwick First Declaration).  From 2012 until January 22, 2020, LegacyX employed Sedgwick as a User Experience Designer.  ECF Nos. 1 at 15–16 (Complaint); 45-1 at 2 (Sedgwick Second Declaration).  In this position, Sedgwick primarily worked with Canadian

19

clients, and there is no allegation he worked with any South Carolina clients.  ECF 45-1 at 2 (Sedgwick Second Declaration).

From late 2016 to early 2017, AT-PAC began working with LegacyX on the development and maintenance of Hi-Vis.  ECF No. 1 at 15 (Complaint).  On January 17, 2017, AT-PAC and LegacyX entered into a Letter of Understanding ("the 2017 Letter of Understanding") detailing the terms under which LegacyX would provide AT-PAC "software consultation, development and maintenance services . . . as required and as they relate to the Hi-Vis software platform."  ECF No. 1-9 at 2 (the 2017 Letter of Understanding).  Sedgwick signed the letter on behalf of LegacyX and directed it to the attention of Kowalski, who worked for AT-PAC Scaffold at the time.  *Id.*  Less than one year later, LegacyX and AT-PAC executed a formal consulting and service agreement ("the 2017 Consulting and Service Agreement"), with an effective date of December 1, 2017, under which LegacyX would assist AT-PAC with various aspects of Hi-Vis.  ECF Nos. 1 at 17 (Complaint); 1-10 (the 2017 Consulting and Service Agreement).  Sedgwick signed the agreement on behalf of LegacyX.  *Id.*  Notably, the agreement provides "[t]he laws of the Province of Alberta shall apply to this Agreement."  ECF No. 1-10 at 5 (the 2017 Consulting and Service Agreement).  The agreement also contained the following arbitration provision:

> In the event of a dispute between the parties with respect to any of the provisions hereof, the parties agree to submit such dispute to a single arbitrator to be chosen by the parties.  Should the parties be unable to agree on the choice of a single arbitrator, such arbitrator shall be chosen by a Justice of the Court of Queen's Bench of Alberta.  The arbitration shall be held pursuant to the provisions of the Arbitration's Act of Alberta as then in force.

*Id.*

20

In 2019, LegacyX and AT-PAC executed a software maintenance agreement ("the 2019 Maintenance Agreement"), related to Hi-Vis.  ECF No. 1-11 at 2–3 (the 2019 Maintenance Agreement).  The only site visits required of LegacyX under the agreement were to take place at an AT-PAC office in Houston, Texas.  *Id.* at 7.  The 2019 Maintenance Agreement also provided it would be governed by the laws of the Province of Alberta, Canada and contained the identical arbitration provision appearing in the 2017 Consulting and Service Agreement.  *Id.* at 10.  Sedgwick signed on behalf of LegacyX.  *Id.* at 11.  Before Sedgwick left LegacyX, on December 31, 2019, Lumsden sent an email to Sedgwick's LegacyX email address from his MPC email address stating: "This is confirmation of a commitment from MPC for $100,000 CDN for commercialization of Swift Plant.  Please send us an invoice for this . . . 'not to exceed' phase 1. We can confirm [the] work packages and deliverables from there."  ECF No. 1-12 (Copy of Email). According to the Complaint, this email indicated LegacyX would be commercializing Swift Plant for MPC in return for 100,000.00 Canadian Dollars.  ECF No. 1 at 20 (Complaint).  Nothing materialized from this email, as LegacyX never pursued any business with MPC.  *Id.* at 21-22.

After Sedgwick left LegacyX, he formed Cert Locker and since February 2020, has been employed by Cert Locker as a User Experience Designer.  ECF Nos. 22-4 at 4 (Sedgwick First Declaration); 45-1 at 1 (Sedgwick Second Declaration).  In addition to Sedgwick's role as an employee, Sedgwick serves as Cert Locker's President, and Sedgwick, Lumsden, and Osswald serve as directors.  ECF No. 1 at 20 (Complaint); ECF No. 57-2 (Alberta Canada Corporate Record for Cert Locker).

21

"The Cert Locker has three clients, one located in Alberta, Canada, another located in Chicago, Illinois, and the third being MPC."  ECF No. 45-1 at 2 (Sedgwick Second Declaration). Cert Locker assists MPC in making the improvements MPC desires to the Swift Plant software program.  ECF No. 22-4 at 5 (Sedgwick First Declaration).  Troy Kowalski is Sedgwick's main point of contact in this regard.  ECF No. 45-1 at 2 (Sedgwick Second Declaration).  Moreover, MPC compensates Cert Locker for its services via a wire transfer that originates from a bank in Wisconsin.  *Id.*

### C. Analysis.

#### 1. Kowalski.

##### a. Part One: Purposeful Availment?

The court now takes up the first part of the three-part test for specific jurisdiction as to Kowalski.  In determining whether a defendant purposefully availed himself of the privilege of conducting activities within the forum state in the business context, as relevant here, courts look to a variety of non-exclusive factors, including (a) "whether the defendant maintains offices or agents in a foreign state"; (b) "whether the defendant owns property in the forum state"; (c) "whether the defendant reached into the forum state to solicit or initiate business"; (d) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (e) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (f) "whether the defendant made in-person contact with a resident of the forum in the forum state regarding the business relationship"; (g) "the nature, quality, and extent of the parties' communications about the business being transacted"; and (h) "whether the performance of

22

contractual duties was to occur within the forum." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (collecting cases).

Plaintiffs point to the following as sufficient to carry their burden of establishing purposeful availment as to Kowalski. On MPC's website, the only address MPC provides is 1236 Ebenezer Road, Suite 220, in Rock Hill, South Carolina, with a pin drop pointing to that location on a map. On MPC's page for the digital marketing platform LinkedIn, MPC lists this same address as its headquarters and primary location. In light of these representations on the internet, Plaintiffs contend the MPC Defendants contradict themselves by submitting Osswald's Declaration averring MPC's principal office is located at 8404 Venture Circle, Weston, Wisconsin. Plaintiffs also point out this Venture Circle address is also the address for Applied Laser Technologies, a business in which Osswald is the managing partner. Kowalski holds a 26.5325% membership interest in MPC. Kowalski is the sole director and voting shareholder of BellScaff MPC Solutions, LTD., and in his capacity as Senior Construction Management Consultant for that company, he serves as one of MPC's three managers. Based upon these facts, Plaintiffs contend, "Kowalski's role at MPC . . . would necessarily require him to interact with MPC . . . in South Carolina, even if he did not physically travel [t]here." ECF No. 38 at 8. "Because of MPC['s] presence in South Carolina," Plaintiffs' argument goes, "Kowalski cannot be surprised at facing litigation in this forum related to his dealing with, and on behalf of MPC," and therefore, "has purposefully availed himself of the privilege of conducting activities in South Carolina . . . ." *Id.*

After carefully considering Plaintiffs' allegations in the light most favorable to Plaintiffs, the court finds Plaintiffs' arguments have failed to make out a *prima facie* case that Kowalski has

23

purposefully availed himself of the privilege of conducting activities within South Carolina.  The same conclusion holds true under the preponderance of the evidence standard.  Kowalski is a citizen and resident of Canada.  He works in Canada.  He has never maintained an office or an agent in South Carolina.  He has never owned property in South Carolina.  There is no allegation he deliberately reached into South Carolina to solicit or initiate any business in South Carolina, exploit a market in South Carolina, or work in South Carolina.  Similarly, the record is void of evidence Kowalski engaged in significant or long-term business activities in South Carolina.  MPC has no customers in South Carolina.  Kowalski has never entered a contractual relationship centered in South Carolina, and his employment contract with AT-PAC Scaffold provided it would be governed by the laws of the Province of Alberta, Canada.  Kowalski visited South Carolina once for a few days fifteen years ago and never made in-person contact with a resident of South Carolina regarding any business relationship that is the subject of the instant litigation.  At best, the court can conclude the nature, quality, and extent of Kowalski's business communications directed at South Carolina or its residents are minimal, as he only speaks with Lumsden from time to time.   Finally, no performance of any contractual duties on the part of Kowalski occurred or is set to occur within South Carolina.

Plaintiffs also rely on the fact Kowalski holds a 26.5325% membership interest in MPC, a limited liability company over which the court's personal jurisdiction is not challenged.  However, the record is wholly lacking in evidence sufficient to establish MPC is the alter ego of Kowalski, such that the court could exercise personal jurisdiction vicariously over Kowalski under a corporate-veil-piercing theory. *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 391–92 (4th Cir.

24

2018) ("[W]hen a court has engaged in traditional veil piercing, the court may exercise personal jurisdiction vicariously over an individual if the court has jurisdiction over the individual's alter ego company."). As with a corporation, an LLC generally protects its members from personal liability for the actions of the LLC. *See id.* at 385. Whether veiling piercing is justified is generally governed by the law of the state in which the entity is incorporated or formed. *Id.* at 386. For MPC, that state is Wisconsin. The Wisconsin Supreme Court "recognizes that the corporation is a separate entity and is treated as such under all ordinary circumstances." *Fontana Builders, Inc. v. Assurance Co. of Am.*, 882 N.W.2d 398, 414 (Wis. 2016) (internal quotation marks omitted). Under Wisconsin law, the legal fiction of corporate separateness "is not to be lightly disregarded," *Consumer's Co-op of Walworth County v. Olsen*, 419 N.W.2d 211, 213 (Wis. 1988), and thus, "[p]iercing the corporate veil is appropriate only when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim," *Fontana Builders, Inc.*, 882 N.W.2d at 414 (internal quotation marks omitted). Disregard of corporate formalities and inadequate capitalization are significant factors in determining whether corporate separateness exists. *Consumer's Co-op*, 419 N.W.2d at 217. Here, there is no allegation MPC failed to properly maintain its corporate personhood, records, or funds, or that observing the corporate separateness between MPC as a legal entity and Kowalski's minority membership interest would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim. Accordingly, the fact Kowalski holds a 26.5325% membership interest in MPC fails to establish Kowalski purposefully availed himself of the privilege of conducting activities within South Carolina in the business context.

Plaintiffs rely on the fact Kowalski, in his capacity as Senior Construction Management Consultant for BellScaff MPC Solutions, LTD., serves in Alberta, Canada as one of MPC's three managers.  Working as a consultant for a Canadian corporation providing management services in Canada to MPC, a Wisconsin company with a headquarters in South Carolina does not suffice. Critically, there is no allegation MPC has customers in South Carolina.  Plaintiffs do not dispute the only projects on which MPC has used the Swift Plaint software program are in Texas. Moreover, Sedgwick and Cert Locker, the alleged developers and maintainers of the Swift Plant software program on behalf of MPC, are both located in Canada.  MPC is a Wisconsin entity, maintains its corporate records in Wisconsin, and conducts its financial activities in Wisconsin, including issuing checks to contractors.  Plaintiffs contend because MPC holds itself out to the public on the internet as being headquartered in Rock Hill, South Carolina and does not list other locations for MPC other than Rock Hill, South Carolina, "Kowalski's role at MPC . . . would necessarily require him to interact with MPC . . . in South Carolina, even if he did not physically travel [t]here."  ECF No. 38 at 8.  Given Kowalski's business activities on behalf of MPC occurred in Canada and are directed toward Texas, Plaintiffs have not carried their burden of establishing Kowalski purposefully availed himself of the privilege of conducting activities within South Carolina in the business context.  This is so despite the court accepting the allegations in the Complaint as true, including that Kowalski, Lumsden, MPC, Sedgwick, and Cert Locker, among others, have infringed Plaintiffs' copyright in the Hi-Vis software program through their use of the Swift Plant software program and resolving any factual disputes in Plaintiffs' favor.

In sum, Plaintiffs have provided the court with little to no evidence Kowalski has purposefully availed himself of the privilege of conducting activities in South Carolina, thus invoking the benefits and protections of its laws.  Therefore, Plaintiffs have failed to carry their burden on the purposeful-availment part of the three-part test for personal jurisdiction.

### b.  Part Two: Arising Out of or Relating To?

The court notes because Plaintiffs have failed to carry their burden on the purposeful-availment part of the three-part test as to Kowalski, the court could rightly stop its analysis without considering parts two and three.  *Consulting Eng'rs*, 561 F.3d at 278.  However, for the sake of thoroughness, the court will address parts two and three.  Part two asks whether Plaintiffs' claims against Kowalski arise out of or relate to his purposeful contacts with South Carolina.  *Ford Motor Co.*, 141 S. Ct. at 1026.  The Fourth Circuit has held "claims arise out of activities directed at the forum state if 'substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim.'"  *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (quoting *Tire Eng'g & Distrb., LLC v. Shandong Linglong Rubber Co., Ltd*, 682 F.3d 292, 303 (4th Cir. 2012)).

Plaintiffs contend their claims against Kowalski arise out of his alleged purposeful communications with Lumsden at MPC's headquarters in South Carolina.  In support, they rely on *Christian Science Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001).  In *Nolan*, a trademark infringement suit, the Fourth Circuit considered "the validity of the exercise of jurisdiction by the district court in the Western District of North Carolina over an Arizona defendant, based on that defendant's contributions to a website created and maintained by

27

a North Carolina co-defendant." *Id.* at 212.  The Arizona defendant desired to establish an online university that would allow present and potential followers of the Christian Science faith "to study the teachings of Mary Baker Eddy and to exchange ideas about Christian Science."  *Id.* at 213 (internal quotations omitted).  Because the Arizona defendant lacked the technical expertise to create and maintain a website, the Arizona defendant accepted the invitation of his friend, the North Carolina co-defendant, to establish and maintain the website.  *Id.* at 216–17.  For his part, the Arizona defendant was solely responsible for preparing and periodically altering the substantive content to be featured on the website (including solicitations for contributions and sales of merchandise), which content he sent electronically to the North Carolina co-defendant.  *Id.* at 213, 216–17.  The North Carolina co-defendant would then physically upload the information to his computer in North Carolina for posting on the website.  *Id.* at 213, 217.

The district court concluded the purposeful-availment part of the test was met, because the Arizona defendant had taken direct actions to create a connection in North Carolina by enlisting the North Carolina co-defendant to download his material into his internet domain, located and maintained in North Carolina, and then consistently sending information, including solicitations for contributions and sales of merchandise, to the North Carolina co-defendant for use on the online university's website.  *Id*. at 216.  When the Arizona defendant challenged personal jurisdiction on appeal, the Fourth Circuit upheld the district court on the basis the Arizona defendant had "deliberately entered a collaborative enterprise with" the North Carolina co-defendant, "well aware that any potentially tortious content he created would be physically uploaded by a North Carolina resident working on a computer in North Carolina."  *Id.* at 217.  The Fourth Circuit also

28

upheld the district court's conclusion plaintiff had satisfied the second part of the test as there was no dispute the substantive content drafted and electronically transmitted by the Arizona defendant to the North Carolina co-defendant formed the basis of the alleged trademark infringement claims. *Id.* at 216.

Here, Plaintiffs describe "the essential basis" of their lawsuit and claims as "the allegation that MPC Defendants, including Kowalski, have infringed and misappropriated [their] protected copyright and proprietary and confidential information, primarily in relation to the Hi-Vis software." ECF 38 at 9. Plaintiffs then contend, because Kowalski is a member of MPC, serves as a consultant to MPC, and MPC maintains office space and personnel in South Carolina, "it is clear that Kowalski would necessarily have to engage in correspondence and collaboration with MPC . . . ." *Id.* Plaintiffs go on to argue, like the Arizona defendant in *Nolan*, "Kowalski's conduct is directed at South Carolina through Lum[s]den's and MPC[']s presence in South Carolina." *Id.* From here, Plaintiffs go on to posit, because "[t]hese contacts with South Carolina would, at least in part, form the basis of Kowalski's wrongful conduct and the claims in this action," their claims arise out of Kowalski's contacts with South Carolina, thus satisfying the second part of the test. *Id.* at 9–10.

Kowalski contends *Nolan* is materially distinguishable, and Plaintiffs have failed to carry their burden of satisfying the second part of the test. The court agrees. Plaintiffs' position requires unreasonable inferences from the allegations in the Complaint and the undisputed evidence before the court. Unlike *Nolan*, nothing in the instant case supports a reasonable inference Kowalski directed any copyright infringing or trade-secret-stealing activities toward South Carolina. While

29

the court accepts as true Lumsden resides in South Carolina and MPC is headquartered in South Carolina, Swift Plant, the alleged copyright infringing software program using AT-PAC trade secrets, was developed outside South Carolina, is maintained outside South Carolina, and has only been used by MPC in connection with a non-South Carolina customer on projects outside South Carolina. Moreover, there is no allegation Kowalski sent to South Carolina, by electronic means or otherwise, the Swift Plant software program or AT-PAC trade secrets to be uploaded on a computer in South Carolina. *Id.* at 217. Accordingly, *Nolan* is inapposite.

Moreover, any suit-related conduct on the part of Lumsden and MPC in South Carolina cannot be used to assert personal jurisdiction over Kowalski. The law is well-settled "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Here, no such connection exists between Kowalski and South Carolina. As the court previously noted, Kowalski's membership in MPC, akin to being a stockholder in a traditional corporation, does not count in determining whether Kowalski has suit-related conduct in South Carolina. *Supra*, at 24–25. Furthermore, as the court also previously noted, Kowalski's role as one of MPC's three managers in his capacity as Senior Construction Management Consultant of BellScaff MPC Solutions, LTD., does not establish his suit-related conduct has a substantial connection with South Carolina simply because MPC is headquartered in South Carolina. *Supra*, at 26. For example, Plaintiffs make no allegation Kowalski improperly accessed Plaintiffs' protected information from computers or documents located in South Carolina or misused such protected information in South Carolina. Because Plaintiffs offer only vague and conclusory allegations of any suit-related

30

contacts by Kowalski with South Carolina, and there is no such evidence in the record, Plaintiffs

have failed to carry their burden of satisfying the second part of the three-part test for specific

jurisdiction whether under the *prima facie* or the preponderance of the evidence standard.

### c. Part Three: Constitutionally Reasonable?

In determining whether exercising specific jurisdiction is constitutionally reasonable, the

court considers various factors, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the
> forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining
> convenient and effective relief; (4) the shared interest of the states in obtaining
> efficient resolution of disputes; and (5) the interests of the states in furthering
> substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279.  Put "[m]ore generally, [the court's] reasonableness analysis

is designed to ensure that jurisdictional rules are not exploited 'in such a way as to make litigation

so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison

to his opponent.'"  *Nolan*, 259 F.3d at 217 (quoting *Burger King Corp.*, 471 U.S. at 478 (internal

quotation marks omitted)).

Here, Plaintiffs make four arguments in support of their contention the exercise of specific

jurisdiction over Kowalski in South Carolina is constitutionally reasonable.  ECF No. 38 at 10–11.

First, despite Kowalski residing in Canada, he has been able to obtain counsel in South Carolina,

and thus, his litigation burden in South Carolina is no worse than the burden of other defendants

who choose to transact business in South Carolina.  *See CFA Inst. v. Institute of Chartered Fin.*

*Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (concluding litigation burden of defendant

located in India who chose to transact business in Virginia was no more substantial than litigation

31

burden encountered by other entities who also chose to transact business in Virginia).  Second, Kowalski is a member of and provides consulting services to a company that holds itself out as being headquartered in South Carolina.  Third, South Carolina has "an interest in ensuring an entity and its agents, conducting business in South Carolina or holding [itself] out as conducting business in South Carolina, do[es] not engage in the infringing and wrongful actions alleged by [Plaintiffs] against Kowalski."  ECF No. 38 at 11.  Fourth, Plaintiffs possess a valid and substantial interest in utilizing the judicial system in South Carolina to adjudicate claims involving their intellectual property and other legal rights against parties that are based in and substantially connected to South Carolina.

For his part, Kowalski contends being forced to litigate in a state where he has almost no contacts would be a significant burden on him.  Moreover, Kowalski contends South Carolina has no interest in adjudicating the suit as it pertains to him.  In support, Kowalski asserts "South Carolina has very little interest in resolving issues involving AT-PAC, which is a Delaware corporation with its principal place of business in Georgia."  ECF No. 20 at 7.  "Likewise," Kowalski asserts, "South Carolina has little interest [in] interpreting employment agreements governed by Canadian law involving a Canadian company (AT-PAC Scaffold) and a Canadian resident."  *Id.*   And while Kowalski acknowledges "Plaintiffs do have an interest in seeking convenient and effective relief," he contends "they can do so in another venue as there is nothing unique about South Carolina and, as such, those interests cannot override the jurisdictional defects toward [him]."  *Id.* at 7–8.

32

After considering the parties' arguments and the relevant factors, the court concludes exercising specific jurisdiction over Kowalski is not constitutionally reasonable. The burden on Kowalski of further litigating this case in South Carolina is substantial given he works and resides more than two thousand miles from South Carolina in western Canada, has only visited South Carolina once for a few days approximately fifteen years ago, owns no property in South Carolina, and has not engaged in any suit-related conduct directed at South Carolina or one of its residents. South Carolina lacks a significant interest in deterring copyright infringement against and theft of trade secrets from non-South Carolina plaintiffs by a non-South Carolina resident, who committed the allegedly offending conduct via projects outside South Carolina for a non-South Carolina customer.[5] Additionally, no targeting by the non-South Carolina resident of any economic market in South Carolina occurred. The same course of logic applies to the employment contract dispute between Plaintiffs and Kowalski. Kowalski resides in Canada, only ever having worked for AT-PAC Scaffold in Canada, and his employment contract with AT-PAC Scaffold, a Canadian company, expressly provides it "shall be governed by the laws of the Province of Alberta and the parties irrevocably attorn to the jurisdiction of the Courts of the Province of Alberta in respect of any matter or thing arising out of this agreement." ECF No. 1-7 at 8. On top of this, AT-PAC, who claims it is a third-party beneficiary of this contract, is a Delaware corporation with its

---

[5]   As previously explained, there are no specific (*i.e.*, non-conclusory) allegations of suit-related conduct by Kowalski directed at South Carolina. Similarly, there is no evidence Kowalski conducted any suit-related conduct directed at South Carolina.

principal place of business in Georgia.  The interests of South Carolina are nowhere to be found in these circumstances.

Plaintiffs' reliance on the facts Lumsden works and resides in South Carolina and MPC is headquartered in South Carolina to carry their burden is a non-starter because the specific-jurisdiction inquiry under the Due Process Clause "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*,  571 U.S. 284 (citing *Keeton,* 465 U.S. at 775). Here, that means the inquiry focuses on the relationship among Kowalski, South Carolina, and Plaintiffs' claims alleged against him, not the relationship among Lumsden and/or MPC, South Carolina, and Plaintiffs' claims against them.  Accordingly, without any specific allegations or evidence of suit-related conduct on the part of Kowalski tied to South Carolina, that Lumsden works and resides in South Carolina and MPC is headquartered here fail to establish the exercise of specific jurisdiction over Kowalski would be constitutionally reasonable.  In sum, the court concludes Plaintiffs have failed to carry their burden of establishing the exercise of specific jurisdiction over Kowalski would be constitutionally reasonable under either the *prima facie* standard or the preponderance of the evidence standard.

### 2. Sedgwick and Cert Locker.

### a. Part One: Purposeful Availment?

The court next addresses the first part of the three-part test for specific jurisdiction as to Sedgwick and Cert Locker.  As previously set forth, in determining whether a defendant purposefully availed himself of the privilege of conducting activities within the forum state in the business context, as relevant here, courts look to a variety of non-exclusive factors, including (a)

34

"whether the defendant maintains offices or agents in a foreign state"; (b) "whether the defendant owns property in the forum state"; (c) "whether the defendant reached into the forum state to solicit or initiate business"; (d) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (e) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (f) "whether the defendant made in-person contact with a resident of the forum in the forum state regarding the business relationship"; (g) "the nature, quality, and extent of the parties' communications about the business being transacted"; and (h) "whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

Plaintiffs point to the following as sufficient to carry their burden of establishing purposeful availment as to Sedgwick and Cert Locker. MPC actively holds itself out "to the public as being in South Carolina" by: (1) listing only a Rock Hill, South Carolina address on its website with a pin drop pointing to that location on a map; and (2) listing the same address as its headquarters and primary location on its LinkedIn page. ECF No. 57 at 9. Therefore, Plaintiffs' argument goes, Sedgwick and Cert Locker's business interactions with MPC "would necessarily require them to regularly interact with MPC . . . in South Carolina, even if, for purposes of argument only, Sedgwick or other employees of . . . Cert Locker have not physically traveled [t]here." *Id.* Plaintiffs additionally rely on the fact Cert Locker has a director who resides in South Carolina, *i.e.*, Lumsden, and their mistaken belief Lumsden is a voting shareholder in Cert Locker.

After carefully considering Plaintiffs' allegations in the light most favorable to Plaintiffs, the court finds Plaintiffs' arguments fail to make out a *prima facie* case that Sedgwick has

35

purposefully availed himself of the privilege of conducting activities within South Carolina. The same goes for Cert Locker. And Plaintiffs fare no better under the preponderance of the evidence standard. Sedgwick is a citizen and resident of Canada. He works in Canada. Cert Locker is a Canadian Corporation with its principal place of business in Canada. No Cert Locker employees have ever worked in South Carolina. Neither Sedgwick nor Cert Locker has ever maintained an office or an agent in South Carolina. Neither has ever owned property in South Carolina. There is no specific allegation Sedgwick or Cert Locker deliberately reached into South Carolina to solicit or initiate any business in South Carolina or exploit a market in South Carolina. Similarly, the record is devoid of evidence Sedgwick or Cert Locker engaged in significant or long-term business activities in South Carolina. Although MPC is a Cert Locker customer and MPC holds itself out as being headquartered in South Carolina, when Sedgwick performs work for MPC, his main point of contact is Kowalski, who works and resides in Canada. MPC pays Cert Locker via wire transfer originating from a bank in Wisconsin. At best, the court can conclude the nature, quality, and extent of Sedgwick and Cert Locker's business communications directed at South Carolina or its residents are minimal. Finally, no performance of any contractual duties on the part of Sedgwick or Cert Locker occurred or are set to occur within South Carolina and there is no South Carolina choice of law provision in any contract to which either Sedgwick or Cert Locker is a party.

Plaintiffs' reliance on the fact Lumsden is a Cert Locker director as an act of purposeful availment on the part of Cert Locker is of no moment given the complete lack of evidence to suggest Cert Locker has any control or say so over where its directors reside. Furthermore,

36

Plaintiffs are mistaken Lumsden is a voting shareholder of Cert Locker. Their own evidentiary submission shows otherwise. ECF No. 57-2 (Alberta Canada Corporate Record for Cert Locker).

In sum, Plaintiffs have provided the court with little to no evidence Sedgwick has purposefully availed himself of the privilege of conducting activities in South Carolina, thus invoking the benefits and protections of its laws. The same goes for Cert Locker. Therefore, Plaintiffs have failed to carry their burden on the purposeful-availment part of the three-part test for personal jurisdiction as to Sedgwick and Cert Locker.

### b. Part Two: Arising Out of or Relating To?

Like Kowalski, the court notes because Plaintiffs have failed to carry their burden on the purposeful-availment part of the three-part test as to Sedgwick and Cert Locker, the court could rightly stop its analysis without considering parts two and three. *Consulting Eng'rs*, 561 F.3d at 278. However, for the sake of thoroughness, the court will address parts two and three. Part two asks whether Plaintiffs' claims against Sedgwick and Cert Locker arise out of or relate to their respective purposeful contacts with South Carolina. *Ford Motor Co.*, 141 S. Ct. at 1026. Again, the Fourth Circuit has held "claims arise out of activities directed at the forum state if 'substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim.'" *UMG Recordings, Inc.*, 963 F.3d at 354 (quoting *Tire Eng'g & Distrb., LLC*, 682 F.3d at 303).

Plaintiffs contend their claims against Sedgwick and Cert Locker arise out of their alleged suit-related purposeful communications with Lumsden at MPC's headquarters in South Carolina. In support, they rely once again on *Nolan*, the trademark infringement suit where the Fourth Circuit

37

considered "the validity of the exercise of jurisdiction by the district court in the Western District of North Carolina over an Arizona defendant, based on that defendant's contributions to a website [for an online university] created and maintained by a North Carolina co-defendant." 259 F.3d at 212. For his part, the Arizona defendant was solely responsible for preparing and periodically altering the substantive content to be featured on the website (including solicitations for contributions and sales of merchandise), which content he sent electronically to the North Carolina co-defendant. *Id.* at 213, 216–17. The North Carolina co-defendant would then physically upload the information to his computer in North Carolina for posting on the website. *Id.* at 213, 217. On appeal, the Arizona defendant challenged the district court's conclusion the purposeful-availment part of the test was met, because the Arizona defendant had taken direct actions to create a connection in North Carolina by enlisting the North Carolina co-defendant to download his material into his internet domain, located and maintained in North Carolina, and then consistently sending information, including solicitations for contributions and sales of merchandise, to the North Carolina co-defendant for use on the website. *Id.* at 216. The Fourth Circuit upheld the district court on the basis the Arizona defendant had "deliberately entered a collaborative enterprise with" the North Carolina co-defendant, "well aware that any potentially tortious content he created would be physically uploaded by a North Carolina resident working on a computer in North Carolina." *Id.* at 217. The Fourth Circuit also upheld the district court's conclusion plaintiff had satisfied the second part of the test as there was no dispute the substantive content drafted and electronically transmitted by the Arizona defendant to the North Carolina co-defendant formed the basis of the alleged trademark infringement claims. *Id.* at 216.

38

Here, Plaintiffs describe "the essential basis" of their lawsuit and claims against Sedgwick and Cert Locker as "the allegation that they have worked with and assisted MPC Defendants in infringing and misappropriating AT-PAC's protected copyright, trade secret, proprietary and confidential information, primarily in relation to the Hi-Vis software." ECF 57 at 10. Plaintiffs then contend, because Cert Locker is an MPC contractor, Sedgwick works for Cert Locker, and MPC maintains office space and personnel in South Carolina, "it is clear" Sedgwick and Cert Locker "would necessarily have to engage in correspondence and collaboration with MPC . . . ." *Id.* at 11. In support, Plaintiffs point to the December 31, 2019 email Lumsden sent Sedgwick at Sedgwick's LegacyX email address, indicating LegacyX would be commercializing Swift Plant for MPC in return for 100,000.00 Canadian Dollars. ECF No. 1 at 20 (Complaint). Plaintiffs then go on to argue, like the Arizona defendant in *Nolan*, Sedgwick and Cert Locker's "conduct is directed at South Carolina through Lum[s]den's and MPC[']s presence in South Carolina." ECF No. 57 at 11. Additionally, Plaintiffs rely on the fact Lumsden is a director of Cert Locker and the fact Makzo Corp., an entity with the same address as MPC in Rock Hill, South Carolina, is a voting shareholder of Cert Locker. From here, Plaintiffs go on to posit, because "[t]hese contacts with South Carolina, at least in part, form the basis of [Sedgwick and Cert Locker's] wrongful conduct and the claims in this action," their claims arise out of Sedgwick and Cert Locker's contacts with South Carolina, thus satisfying the second part of the test. *Id.*

Sedgwick and Cert Locker contend *Nolan* is materially distinguishable, and Plaintiffs have failed to carry their burden of satisfying the second part of the test. The court agrees. Plaintiffs' position requires unreasonable inferences from the allegations in the Complaint and the undisputed

39

evidence before the court.  Unlike *Nolan*, nothing in the instant case supports a reasonable inference Sedgwick or Cert Locker directed any copyright infringing or trade-secret-stealing activities toward South Carolina.  For example, Plaintiffs make no allegation Sedgwick or Cert Locker improperly accessed Plaintiffs' protected information from computers or documents located in South Carolina or misused such protected information in South Carolina. While the court accepts as true Lumsden resides in South Carolina and MPC is headquartered in South Carolina, Swift Plant, the alleged copyright infringing software program using AT-PAC trade secrets, was developed outside South Carolina, is maintained outside South Carolina, and has only been used by MPC in connection with a non-South Carolina customer on projects outside South Carolina.  Moreover, although MPC is a Cert Locker customer and MPC holds itself out as being headquartered in South Carolina, when Sedgwick performs work for MPC on behalf of Cert Locker, his main point of contact is Kowalski, who works and resides in Canada.  Finally, there is no allegation Sedgwick or Cert Locker sent to South Carolina, by electronic means or otherwise, the Swift Plant software program or AT-PAC trade secrets to be uploaded on a computer in South Carolina.  *Id.* at 217.  Accordingly, *Nolan* is inapposite.

Plaintiffs' reliance on the fact South Carolina resident Lumsden is a Cert Locker director as suit-related conduct on the part of Cert Locker is of no moment given the complete lack of evidence to suggest Cert Locker has any control or say so over where its directors reside. Similarly, the fact Makzo Corp., an entity with the same address as MPC in Rock Hill, South Carolina, is a minority voting shareholder of Cert Locker adds nothing to the analysis given the record is wholly lacking in evidence sufficient to establish Makzo is the alter ego of Cert Locker,

40

such that the court could exercise personal jurisdiction vicariously over Cert Locker under a corporate-veil-piercing theory. *Sky Cable, LLC*, 886 F.3d at 391–92.  Additionally, the December 31, 2019 email Lumsden sent Sedgwick on behalf of MPC at Sedgwick's LegacyX email address, indicating LegacyX would be commercializing Swift Plant for MPC in return for 100,000.00 Canadian Dollars is not suit-related conduct on the part of Sedgwick or Cert Locker.  ECF No. 1 at 20 (Complaint).  This is because Cert Locker did not yet exist at the time of the email, the email shows MPC sought to do business with LegacyX, where Sedgwick was only an employee at the time, and LegacyX never did business with MPC.

To summarize, the law is well-settled "[f]or a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  Because Plaintiffs offer only vague and conclusory allegations of any suit-related contacts by Sedgwick or Cert Locker with South Carolina, and there is no such evidence in the record, Plaintiffs have failed to carry their burden of satisfying the second part of the three-part test for specific jurisdiction whether under the *prima facie* or the preponderance of the evidence standard.

### c. Part Three: Constitutionally Reasonable?

As previously set forth, in determining whether exercising specific jurisdiction is constitutionally reasonable, such that a non-resident defendant should reasonably anticipate being haled into court in the forum state, the court considers various factors, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining

41

efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279.

Plaintiffs make the following four arguments in support of their contention the exercise of specific jurisdiction over Sedgwick and Cert Locker in South Carolina is constitutionally reasonable.  ECF No. 57 at 12-13.  First, despite Sedgwick residing in the Province of Alberta, Canada and Cert Locker having its principal place of business there, they have been able to obtain counsel in South Carolina, and thus, their litigation burden in South Carolina is no worse than the burden of other defendants who choose to transact business in South Carolina.  *See CFA Institute*, 551 F.3d at 296 (concluding litigation burden of defendant located in India who chose to transact business in Virginia was no more substantial than litigation burden encountered by other entities who also chose to transact business in Virginia).  Second, Cert Locker and Sedgwick on behalf of Cert Locker provide consulting services to a company that holds itself out on its website and LinkedIn page as being headquartered in South Carolina and does not list another location.  Third, South Carolina has "an interest in ensuring an entity and its agents, conducting business in South Carolina or holding themselves out as conducting business in South Carolina, do not engage in the infringing and wrongful actions alleged by [Plaintiffs] against [Sedgwick and Cert Locker]."  *Id.* at 12.  Fourth, Plaintiffs possess a valid and substantial interest in utilizing the judicial system in South Carolina to adjudicate claims involving their intellectual property and other legal rights against parties that are based in and substantially connected to South Carolina.

42

For their part, Sedgwick and Cert Locker primarily contend nothing in the following facts and circumstances put either of them on notice they should have reasonably anticipated being haled into court in South Carolina, and therefore, requiring them to litigate Plaintiffs' claims in South Carolina would be constitutionally unreasonable. Sedgwick is a Canadian citizen and resides in the Province of Alberta, Canada, nearly 2,500 miles from South Carolina, and has physically never been in South Carolina. Cert Locker is a Canadian corporation, which has its principal place of business in the Province of Alberta, Canada. Neither owns property in South Carolina, maintains an office in South Carolina, dispatches employees to South Carolina, nor has business interests in South Carolina. When performing consulting work for MPC, Kowalski is their main point of contact, an individual who also resides in the Province of Alberta, Canada and has not physically been in South Carolina for more than fifteen years. MPC, a Wisconsin company, compensates Cert Locker for its consulting work via wire transfers originating from a bank in Wisconsin. The contractual agreements Plaintiffs rely on in part to implicate Sedgwick and Cert Locker both include a choice of law provision referencing the laws of the Province of Alberta, Canada and a dispute resolution provision referencing the Queen's Bench of Alberta. ECF Nos. 1-10 at 5 (2017 Consulting Service Agreement); 1-11 at 10 (2019 Maintenance Agreement). As for Lumsden's South Carolina residency and MPC being headquartered in Rock, Hill South Carolina, Sedgwick and Cert Locker argue these facts are insufficient to have reasonably put either of them on notice of the potential to be haled into court in South Carolina given the above listed facts and the utter lack of allegations of any specific communications or conduct Sedgwick or Cert Locker directed to Lumsden in South Carolina, suit-related or otherwise.

43

Sedgwick and Cert Locker also argue the fact they have been able to retain counsel to represent them in moving to dismiss for lack of personal jurisdiction does not weigh in favor of constitutional reasonableness given Plaintiffs offer nothing more than speculation and conclusory assertions they have ever transacted business with MPC in South Carolina, and the record is devoid of evidence of the same.  Finally, while Sedgwick and Cert Locker acknowledge Plaintiffs' generic interest in having their rights recognized and resolved, Sedgwick and Cert Locker point out there is nothing unique about South Carolina in this regard, and the courts in Canada are accessible to Plaintiffs, especially given AT-PAC Scaffold is a Canadian corporation and the agreements Plaintiffs rely on in part to implicate them each include a choice of law provision choosing the law of Alberta, Canada as governing any dispute arising under the agreements.

After considering the parties' arguments and the relevant factors, the court concludes exercising specific jurisdiction over Sedgwick and Cert Locker is constitutionally unreasonable. The burden on Sedgwick further litigating this case in South Carolina is substantial given he works and resides more than two thousand miles from South Carolina in western Canada, has never visited South Carolina, owns no property in South Carolina, and, on this record, has not engaged in any suit-related conduct directed at South Carolina or one of its residents.  The same goes for Cert Locker, which is a Canadian corporation with its principal place of business in the Province of Alberta, Canada.  South Carolina lacks a significant interest in deterring copyright infringement against and theft of trade secrets from non-South Carolina plaintiffs by a non-South Carolina individual or a non-South Carolina corporation, who committed the allegedly offending conduct

via projects outside South Carolina for a non-South Carolina customer.[6]  Additionally, no targeting by the non-South Carolina individual or the non-South Carolina corporation of any economic market in South Carolina occurred.  South Carolina would also have no particular interest in construing agreements between a Canadian company, *i.e.*, LegacyX, and a Delaware corporation with its principal place of business in Georgia.  The interests of South Carolina are nowhere to be found in these circumstances.

As with Kowalski, Plaintiffs' reliance on the facts Lumsden works and resides in South Carolina and MPC is headquartered here to carry their burden is a non-starter because the specific-jurisdiction inquiry under the Due Process Clause "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*,  571 U.S. 284.  Here, that means the inquiry focuses on the relationship among Sedgwick, South Carolina, and Plaintiffs' claims alleged against him and Cert Locker, South Carolina, and Plaintiffs' claims against it, not the relationship among Lumsden and/or MPC, South Carolina, and Plaintiffs' claims against them.  Accordingly, without non-speculative and non-conclusory allegations or evidence of suit-related conduct on the part of Sedgwick or Cert Locker tied to South Carolina, that Lumsden works and resides in South Carolina and MPC is headquartered here fail to establish the exercise of specific jurisdiction over Sedgwick or Cert Locker would be constitutionally reasonable.  In sum, the court concludes Plaintiffs have failed to carry their burden of establishing the exercise of specific jurisdiction over Sedgwick or

---

[6]   As previously explained, there are no specific (*i.e.*, non-conclusory) allegations of suit-related conduct by Sedgwick or Cert Locker directed at South Carolina.  Similarly, there is no evidence Sedgwick or Cert Locker conducted any suit-related conduct directed at South Carolina.

Cert Locker would be constitutionally reasonable under either the *prima facie* standard or the preponderance of the evidence standard.

**D.  Summary/Conclusion.**

Under either the *prima facie* or preponderance of evidence standard, Plaintiffs have failed to support personal jurisdiction over Kowalski, Sedgwick, or Cert Locker in South Carolina. Assessing Plaintiffs' evidence under the *prima facie* standard, requires applying a favorable presumption to the Complaint allegations, taking the allegations in the light most favorable to Plaintiffs.  Here, the Complaint allegations, taken as true, simply provide no link between Kowalski, Sedgwick, or Cert Locker and South Carolina.  At best, the Complaint and additional exhibits submitted by Plaintiffs support that Kowalski, Sedgwick and Cert Locker worked with Lumsden, a South Carolina resident and MPC, a Wisconsin company headquartered in South Carolina, to steal Plaintiffs' Hi-Vis software.  There is no non-conclusory allegation or evidence of any activity by Kowalski, Sedgwick or Cert Locker in South Carolina, no non-conclusory allegation or evidence any of them took actions which created a substantial connection with South Carolina, and, in fact, no non-conclusory allegation or evidence of any actions in South Carolina in furtherance of a plan to steal or infringe copyrights to Plaintiffs' Hi-Vis software program. Rather, all the non-conclusory allegations and evidence of record indicate that any such activity took place in Wisconsin, Canada, Louisiana, and Texas.  The fact that Kowalski, Sedgwick, and Cert Locker worked with Lumsden, a South Carolina resident, and were party to contracts with MPC in furtherance of an alleged scheme that was carried out in Wisconsin, Canada, Louisiana, and Texas and never aimed at exploiting a market in South Carolina, is insufficient to assert South

46

Carolina's jurisdiction over them.  Assessing evidence of record under the preponderance standard likewise provides even less support for jurisdiction.  Accordingly, the court finds it lacks personal jurisdiction over Kowalski, Sedgwick, and Cert Locker.

## IV.  MPC Defendants' Motion to Transfer Venue.

The court next considers the MPC Defendants' motion to transfer venue to the Western District of Wisconsin, pursuant to 28 U.S.C. § 1406(a).  According to the MPC Defendants, venue in the District of South Carolina is improper for Plaintiffs' claims against them, and therefore, such claims should be transferred to the Western District of Wisconsin, where (1) venue is proper, (2) the district court has personal jurisdiction over MPC as a Wisconsin company, and (3) Kowalski and Lumsden, the only two MPC managers who do not reside in Wisconsin, both consent to personal jurisdiction there.  ECF No. 20 at 8–10.  As to the MPC Defendants' assertion venue in the District of South Carolina is improper, MPC Defendants first point out Plaintiffs' Complaint asserts venue is proper in the District of South Carolina solely on the basis of 28 U.S.C. § 1391(b)(2), which provides venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"[7]  28 U.S.C. § 1391(b)(2).  The MPC Defendants next contend venue in the District of South Carolina is improper because the Complaint alleges almost no facts connecting Plaintiffs' claims to South Carolina, instead alleging

---

[7] Venue under § 1391(b)(2) is often referred to in jurisprudence and scholarly commentary as "transactional venue."  *See, e.g.*, *Nabong v. Paddayuman*, 289 F. Supp.3d 131, 134 (D.D.C. Feb. 5, 2018); 14D Charles Alan Wright, Arthur R. Miller, & Richard D. Freer, *Federal Practice & Procedure Jurisdiction* § 3806 (4th ed. April 2021 Update).

facts substantially connecting Plaintiffs' claims to Wisconsin, Canada, Texas, and Louisiana.  ECF No. 20 at 8.

In initially opposing the motion, Plaintiffs abandon their assertion of transactional venue under §1391(b)(2), instead asserting venue is proper over all defendants under 28 U.S.C. § 1400(a), which provides:  "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyright or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."  Plaintiffs then assert "[t]his statute has been construed to mean that a copyright infringement action may be brought anywhere there is personal jurisdiction over a defendant."  ECF No. 38 at 11.  In support, Plaintiffs cite *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017 (N.D. Iowa 2013).  As to the propriety of transferring venue to the Western District of Wisconsin, Plaintiffs primarily assert their choice of forum should not lightly be disturbed and transferring venue to the Western District of Wisconsin only shifts any inconvenience of litigating to them, located in Georgia and Canada.  ECF No. 38 at 11–12.  Notably, however, Plaintiffs "agree" the court "may transfer this case to the Western District of Wisconsin," in the event the court determines venue in the District of South Carolina is improper.  ECF No. 38 at 12 n.3.

For reasons that follow, the court:  (1) holds, at a minimum, venue over Kowalski is improper; and (2) grants the MPC Defendants' motion to transfer Plaintiffs' claims against them to the Western District of Wisconsin; and (3) transfers all remaining claims in the case to the Western District of Wisconsin.

### A. The Applicable Law and the Burden of Proof.

Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Fourth Circuit interprets this statute broadly "to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." *In re Carefirst of Md., Inc.*, 305 F.3d 253, 255–56 (4th Cir. 2002) (citing *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988) (adopting rule § 1406(a) permits transfer of a case to any district in which venue would lie had the case been originally brought there for any reason which constitutes an impediment to a decision on the merits in the transferring court)). *See*, *e.g.*, *Under Armour, Inc. v. Battle Fashions, Inc.*, Civil Action No. RDB-17-3223, 2019 WL 3239001, at *2, 7 (D. Md. July 18, 2019) (in action seeking declaratory judgment plaintiff's use of phrases "'I CAN DO ALL THINGS'" and "'I CAN. I WILL.'" do not infringe defendant's "'ICAN'" trademark, district court found personal jurisdiction lacking over defendant in the District of Maryland but on defendant's motion transferred action to the Eastern District of North Carolina where personal jurisdiction over defendant existed and defendant had previously filed a trademark infringement suit against plaintiff in which plaintiff did not object to venue or personal jurisdiction).

The moving party bears the burden of establishing by a preponderance of the evidence venue is proper in the transferee forum and is in the interest of justice. *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp.2d 710, 711 (D. Md. 2002). Transfer "in the interest of justice" under § 1406(a) follows the same standards as transfers under 28 U.S.C. § 1404(a), another venue

49

transfer statute.[8]  *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir. 1993).

Moreover, under "§ 1406(a), the district court has broad discretion to grant or deny a motion to

transfer to another district." *Landers v. Dawson Const. Plant, Ltd.*, 201 F.3d 436 (Table), 1999

WL 991419, at *2 (4th Cir. Nov. 2, 1999).  *See also In re Ralston Purina Co.,* 726 F.2d 1002, 1005

(4th Cir. 1984) ("An order allowing transfer of a matter to another district is committed to the

discretion of the district court.").   Factors commonly relevant in ruling on a motion to transfer

venue include: (1) the weight accorded plaintiffs' choice of venue; (2) ease of access to sources of

proof; (3) convenience of the parties and witnesses; (4) availability of compulsory process; (5) the

interest in having local controversies decided at home; and (6) the interest of justice.  *Landers*, 201

F.3d 436 (Table), 1999 WL 991419, at *2 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09

(1947)); *see generally* 15 Wright, Miller, & Freer, *Federal Practice and Procedure Jurisdiction* §

3847 (4th ed. April 2021 Update) (discussing general standard in considering transfer of venue).

**B.  Analysis.**

Evaluation of these relevant factors favor the court exercising its broad discretion to

transfer this case to the Western District of Wisconsin.

### 1. Weight Accorded Plaintiffs' Choice of Venue.

Ordinarily, a plaintiff's choice of forum is entitled to substantial weight.  *Akers v. Norfolk*

*& W. Ry. Co.*, 378 F.2d 78, 80 (4th Cir. 1967) (recognizing plaintiff's primary right to choose

---

[8]   Section 1404(a) provides:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

50

forum and right should not be easily overthrown).  However, such choice is entitled to less weight when the plaintiff does not reside in the forum or when the forum has "no discernible connection with the controversy." *Southwest Equip., Inc. v. Stoner & Co., Inc.*, C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (internal quotation marks omitted).  Here we have both.

Neither of the Plaintiffs reside in South Carolina.  One is a Canadian corporation based in Alberta, Canada, and the other is a Delaware corporation with its principal place of business in Georgia.  Furthermore, the Complaint is devoid of allegations South Carolina has a discernible connection with the controversy in that Plaintiffs have pled no facts Defendants engaged in copyright-infringing or trade-secret-stealing conduct in South Carolina pertaining to AT-PAC's protected copyright and proprietary and confidential information, primarily in relation to the Hi-Vis software.  Given these circumstances and the fact Plaintiffs can still pursue their claims against Kowalski in the Western District of Wisconsin but not in the District of South Carolina (due to lack of personal jurisdiction), this factor weighs in favor of transfer.

### 2. Ease of Access to Sources of Proof/Availability of Compulsory Process.

For the following reasons, the factors of ease of access to sources of proof and the availability of compulsory process weigh in favor of transfer.  First, given AT-PAC is based in Georgia and AT-PAC Scaffold is based in Canada, Plaintiffs' ease of access to sources of proof internally (for example, ease of access to Plaintiffs' employees, internal records, and the Hi-Vis software program), will be equally accessible whether venue is in the District of South Carolina or the Western District of Wisconsin.  Second, Plaintiffs will have access to Kowalski and Lumsden

51

as sources of proof in the Western District of Wisconsin through their ability to take discovery but would lack access to Kowalski in the District of South Carolina.  The court considers this a critical fact given one of Plaintiffs' main points in opposing transfer of venue is their position personal jurisdiction over Kowalski exists in the District South Carolina.  ECF No. 38 at 11.  Moreover, Plaintiffs have made clear through their allegations in the Complaint and briefing on the instant motions that Kowalski is one of the ring leaders in all the alleged wrongdoing they seek to prosecute in this case.

Third, the parties' access to Osswald, the third MPC manager (besides Kowalski and Lumsden), would be available in the Western District of Wisconsin given he resides in Weston, Wisconsin, within the Western District of Wisconsin.  Fourth, MPC utilizes a Wisconsin-based accounting firm to handle its financial matters.  Testimony of the accounting firm's employees and records pertaining to its work for MPC will likely be relevant to issues of damages and will be subject to the subpoena power of the court in the Western District of Wisconsin, but not the District of South Carolina.

Fifth, MPC's ultimate acquisition of the Swift Plant software program and the related intellectual property factually has strong ties to Wisconsin and the Western District of Wisconsin in particular.  MPC's first formal relationship with the Swift Plant software program is embodied in the Swift Plant Licensing Agreement between MPC and DPS, which agreement provided it

> shall be governed exclusively by the laws of the State of Wisconsin, without regard to its conflict of laws rules.  The state and federal courts located in Marathon County, Wisconsin shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this Agreement.  Each Party consents to the exclusive jurisdiction of such courts.

52

ECF No. 22-6 at 16 (Swift Plant Licensing Agreement). MPC acquired ownership of the Swift Plant software program and the related intellectual property rights via its merger in Wisconsin with MPC Innovations, another Wisconsin company. MPC Innovations had previously purchased the same from a total of five sellers (DPS, two other Alberta, Canada corporations, and two individual Canadian residents) via the Software Transfer Agreement, providing: (1) it shall be governed in all respects by the laws of the United States of America and Wisconsin; and (2) any judicial action or proceeding arising under or relating to the agreement "shall be brought in, and the Parties hereby consent to the exclusive, personal jurisdiction of, the Circuit Court of the State [of] Wisconsin, County of Marathon, or in the United States District Court for the Western District of Wisconsin." ECF No. 22-7 at 14 (Software Transfer Agreement).

Sixth and finally, given MPC is a Wisconsin company and Lumsden consents to personal jurisdiction in the Western District of Wisconsin, the District of South Carolina offers no easier access to proof on any issue than the Western District of Wisconsin. In sum, the ease-of-access-to-proof factor and the availability-of-compulsory-process factor weigh in favor of transfer.

### 3. Convenience of the Parties and Witnesses.

Plaintiffs contend transferring this case to the Western District of Wisconsin merely shifts the inconvenience of litigating to them, and therefore, this factor weighs in favor of not transferring venue. Plaintiffs' contention is without merit. First, Plaintiffs offer no reason why litigating in the Western District of Wisconsin is less convenient for them than litigating in the District of South Carolina, and the court cannot discern any. Although AT-PAC is geographically closer to South

53

Carolina than Wisconsin, AT-PAC Scaffold is geographically closer to Wisconsin than South Carolina.  Moreover, Wisconsin provides a far more convenient forum for MPC, a Wisconsin company, with one of its three managers, corporate records, and accounting firm located in Wisconsin, and for Kowalski, who is geographically far closer to Wisconsin than to South Carolina.  The same goes for LegacyX, a Canadian corporation also located in the Province of Alberta, Canada.  The Western District of Wisconsin is likely more convenient than the District of South Carolina for the Louisiana defendants (Bellon and DH Jaxon), given there are no allegations of their business dealings with MPC in South Carolina.  In sum, the Western District of Wisconsin overall is a more convenient forum for the parties and the witnesses.

### 5. Interest in Having Local Controversies Decided at Home.

Here, the Complaint, the parties' briefing on the instant motions, and submitted evidence all point to the controversies between Plaintiffs and Defendants having a substantially more local connection to the Western District of Wisconsin than the District of South Carolina.  MPC is a Wisconsin corporation, and according to Osswald (one of MPC's three managers and its corporate agent) and the website for Wisconsin's Department of Financial Institutions, MPC's principal office is located in Weston, Wisconsin, within the Western District of Wisconsin.  ECF Nos. 22 at 2–3 (Osswald Declaration); 22-5 at 2 (Exhibit 1 to Osswald Declaration).  MPC's corporate records are also maintained at the same Wisconsin address.  ECF No. 22 at 2–3 (Osswald Declaration).  Moreover, as just set forth in the court's analysis of the factors considering the ease of access to sources of proof and the availability of compulsory process, MPC's ultimate acquisition of the Swift Plant software program and the related intellectual property factually has

54

strong ties to Wisconsin and the Western District of Wisconsin in particular. *See* discussion *supra* Part IV.B.2., at 51–53. Finally, Wisconsin is at home in interpreting and applying Wisconsin law that governs the two key agreements whereby MPC first leased and then acquired ownership of the software program, *i.e.*, the Swift Plant software program, Plaintiffs allege infringes their copyright in the Hi-Vis software program and illegally uses their trade secrets. In contrast, there are no non-speculative and/or non-conclusory allegations or evidence of suit-related conduct occurring in South Carolina. Indeed, MPC does not even have a single customer in South Carolina. In sum, for all of these reasons, the factor considering a forum's interest in having local controversies decided at home weighs in favor of transferring venue to the Western District of Wisconsin.

### 6. In the Interest of Justice.

The factor considering whether transfer of venue is in the interest of justice weighs heavily in favor of transferring this case to the Western District of Wisconsin. Critically, gaining personal jurisdiction over a defendant in the transferee forum over whom jurisdiction cannot be obtained in the transferor forum is a substantial circumstance favoring transfer as it promotes judicial economy by avoiding multiplicity of litigation resulting from the same transactions or events. 15 Wright, Miller, & Freer, *Federal Practice and Procedure Jurisdiction* § 3854 (4th ed. April 2021 Update) (frequently mentioned as relevant to the interest of justice factor in consideration of transfer of venue is desire to avoid multiplicity of litigation resulting from single transaction or event). As previously noted, (1) personal jurisdiction over Kowalski is lacking in the District of South Carolina, but not in the Western District of Wisconsin based on Kowalski's consent to personal

55

jurisdiction there, and (2) MPC and Lumsden have each consented to personal jurisdiction there as well.  Accordingly, to litigate Plaintiffs' claims against MPC and Lumsden in one jurisdiction, while Plaintiffs' claims based upon the same factual allegations proceed against Kowalski in another, would be contrary to important interests of judicial economy.

### C. Conclusion.

Having considered the factors relevant to whether the court should exercise its discretion to transfer this case to the Western District of Wisconsin and concluding each factor favors transfer, the court exercises its discretion to transfer venue to the Western District of Wisconsin.

## V. Summary/Conclusion.

On Kowalski's Motion to Dismiss for Lack of Personal Jurisdiction, the court holds it lacks personal jurisdiction over Kowalski, but denies the Motion as moot because the court grants the MPC Defendants' Motion to Transfer Venue to the Western District of Wisconsin.  ECF No. 20. On Sedgwick and Cert Locker's Motion to Dismiss for Lack of Personal Jurisdiction, the court holds it lacks personal jurisdiction over Sedgwick and Cert Locker, and thus, grants the Motion. ECF No. 45.

Accordingly, the court: (1) grants Sedgwick and Cert Locker's Motion to Dismiss for Lack of Personal Jurisdiction, and dismisses them without prejudice, ECF No. 45; (2) grants the MPC Defendants' Motion to Transfer Venue to the Western District of Wisconsin, ECF No. 20; (3) denies as moot Kowalski's Motion to Dismiss for Lack of Personal Jurisdiction, *id.*; and (4) transfers all remaining claims in the case to the Western District of Wisconsin.

IT IS SO ORDERED.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 18, 2022